[No. 6026. Decided April 4, 1906.]

THE STATE OF WASHINGTON, *on the Relation of Charles Matson et al., Plaintiff,* v. THE SUPERIOR COURT FOR SKAGIT COUNTY *et al., Respondents.*[1]

DRAINS—CONSTITUTIONAL LAW—DELEGATION OF LEGISLATIVE AUTHORITY. The drainage act, Bal. Code, § 3726, Laws 1895, p. 281, § 12, requiring the superior court to find that a proposed ditch is practicable and conducive to the public health and will increase the value of the lands, is not unconstitutional as a delegation of legislative authority; since the court does not originate or devise the system or plan but simply approves those proposed by the county commissioners.

DRAINS—PROCEEDINGS FOR ASSESSMENT. The drainage act of 1895 does not violate Const., art. 7, § 9, in that it imposes upon the court and jury the duty of making an assessment; since the assessment is made by the ditch commissioners after the jury determined the damages and the value of the land.

STATUTES—TITLE—AMENDMENT. Laws 1905, p. 360, entitled an act amending §§ 3, 9 and 24, of the drainage act entitled, etc., is unconstitutional as to the clause amending § 5 of the drainage act not mentioned in the title; but the same does not affect the amendments of §§ 3, 9 and 24, as they are independent of § 5, which relates only to the bond of the ditch commissioners.

DRAINS—DITCH COMMISSIONERS—BOND. The failure of ditch commissioners to qualify by filing a bond in the required amount, does not invalidate an assessment made by them as *de facto* officers.

DRAINS—PETITION—AMENDMENT. In proceedings for the establishment of a drainage district and ditches, it is proper to allow, upon notice, an amendment of the petition for the purpose of proposing a change in the system.

DRAINS—FEASIBILITY OF PLAN. The fact that some other plan would be more feasible does not deprive the court of jurisdiction to establish the system proposed.

[1] Reported in 85 Pac. 264.

NAVIGABLE WATERS—OBSTRUCTIONS—DAMS—CONSENT OF GENERAL GOVERNMENT. A meandered slough, which is dry except during high tide, when it is navigable for a short distance for small craft and floating logs, is not navigable to the extent of requiring the consent of the United States government to its obstruction by a dam across its mouth to keep tide water from a drainage district.

DRAINS — PETITION — SUFFICIENCY — DETAILED PLANS, SPECIFICA-TIONS AND ESTIMATES. A petition for the establishment of a drain-age district and system of ditches, under the law of 1895, is in-sufficient where it contains no complete description of the proposed improvement, with detailed plans and specifications and draughts of necessary artificial appliances or equipment, or any estimate of the cost, all of which must appear with sufficient particularity to enable them to proceed by contracting for its construction without change or further plans and specifications.

DRAINS—COMPLETION OF SYSTEM. The drainage act of 1895 re-quires the completion of any proposed system of drains with all expedition possible, and it is not competent to propose a complete system, only a portion of which is intended to be constructed at the present time.

Certiorari to review a judgment of the superior court for Skagit county, Joiner, J., entered December 29, 1905, order-ing the establishment of a drainage district and the assess-ment of damages by a jury, after a hearing on the merits. Reversed.

*Benton Embree,* for relators.

*Million & Houser* and *Dave Hammack,* for respondents.

CROW, J.—This is a certiorari proceeding, instituted for the purpose of having the court review the orders and pro-ceedings of the superior court of Skagit county, in approving and establishing a drainage system, and calling a jury to assess damages to the lands of the relators and other property owners, for rights of way for the ditches necessary for said system, and to assess against lands to be benefited within said district the costs and expenses of establishment and con-struction.

On October 4, 1905, a petition was filed in the superior court of Skagit county, by Daniel Sullivan, Erasmus S.

Johnson and William A. Walters, commissioners of drainage district No. 16, as plaintiffs, against Charles Matson and Bertha Matson, his wife, the relators herein, and also against all other property owners and persons interested, as defendants. Said petition contained a full description of all lands within said district, and alleged, that the commissioners proposed to construct, for the benefit of all such lands, a system of drainage, consisting of eight ditches; that a survey and plat of said district had been made, showing the owners of property, the drainage system proposed, and lands necessary to be condemned for rights of way, which plat was attached to said petition and made a part thereof; that the lands within said district were marshy and covered with water; that the proposed improvement would be conducive to the public health, convenience and welfare, and would increase the value of all lands within said district, as estimated, for the purpose of public revenue; that said lands were valuable for agriculture; that said system of drainage was necessary so that said lands could be cultivated at a profit; that the names of owners whose lands were to be benefited, the number of acres owned by each, the maximum amount of benefits per acre, were as set forth in said petition in detail; that, for the purpose of carrying on said proposed improvements, it would become necessary to appropriate certain strips of land belonging to the various owners therein named, and that the estimated values of said lands, and the estimated damages irrespective of benefits to be derived by each tract were as set forth in said petition. Said commissioners prayed an adjudication that said proposed system would constitute a public improvement, that the lands sought to be appropriated were necessary therefor, and asked that a jury be called to assess all benefits and damages to lands not taken, and also the compensation to be paid for lands taken for right of way.

The original petition alleged no plans, details, or specifications for the construction of said improvement, disclosing

the exact character of the work, further than the same might be shown on the plat attached as an exhibit. No draughts of any artificial appliances or equipment necessary in aid of said improvement, together with its estimated cost, were filed with said original petition. The attached exhibit was a large plat of the entire district, showing the Samish river as the western boundary, the North Samish river, also called the Edison slough, as a portion of the northern boundary; also, showing on the western margin of the district a large slough known as McTaggart slough, tributary to the Samish river, and further within the district a second slough, known as the Sullivan slough, tributary to the McTaggart slough; and also showing, near the central portion of the western boundary of the district, another slough, known as the Johnson slough. All of these sloughs were available for use as reservoirs in said system, but the exact method of their proposed use was not stated, defined or detailed.

The plat further shows two main ditches; one, known as the Johnson slough ditch, beginning on the eastern boundary of the district, and running directly west into the Johnson slough, connecting with the Samish river; the other, known as the North Samish river ditch, commencing near the lower line of the district, running in a northerly course through its central portion for a distance of a mile, and thence in a northerly and northwesterly direction into the Edison slough. Another ditch, known as the Sullivan slough ditch, was to commence about one-half mile south of the Johnson slough ditch, which it crossed, and run in a northerly direction into the Sullivan slough, McTaggart slough, and Samish river. All other proposed ditches, five in number, were spurs or tributary to these main ditches. The two main ditches, the Johnson and the North Samish river, as originally proposed, were to cross each other at the southeast corner of section 4, on the south line of the land of the relators. The plat does not show the width or depth of the proposed ditches, or the

character of the work, nor does it provide for any boxes or flumes with flood tide gates where the ditches connect with said sloughs. The district is composed of lands below the level of high tide, protected by dikes. These dikes would obstruct the flow of drainage water from ditches and sloughs into the Samish river at low tide, were it not that boxes or flumes may be placed in the ditches and sloughs where they cross the dikes, the gates of said boxes and flumes closing during high tide and opening during low tide, so that the drainage from the district may be carried away.

The relators, Matson and wife, moved the court to require the commissioners to make their petition more definite and certain by setting forth or annexing thereto draughts, specifications and plans of the boxes or flood tide gates to be maintained in the North Samish river and various sloughs. This motion being sustained, the commissioners filed as an exhibit a single draught or general plan for a box or flume. No specifications were attached thereto, but the draught was drawn upon a scale disclosed thereon. By stipulation this draught was accepted as an amendment to the petition. The commissioners further amended their petition by inserting an additional paragraph, stating the sizes of the proposed ditches, by giving their respective proposed widths and depths. By said amendment they further alleged that a box with a flood tide gate would be maintained in the North Samish river where a dam is now constructed; that if necessary a box with a flood tide gate would be placed at the mouth of the North Samish river ditch; that a box with a flood tide gate would be maintained at the mouth of the Johnson slough; that one or more boxes, as may be necessary, would be maintained in a dam across the mouth of McTaggart slough; that the estimated amount of earth to be removed in constructing the North Samish river ditch, from the point where it crosses the Johnson ditch to its mouth, will be twenty-five thousand yards, at an approximate cost of $3,500; that the approxi-

mate cost and estimate for the construction of all the other ditches, and the remaining portion of the North Samish river ditch will be $1,500; that the costs of the proceedings were estimated at $500; that the costs of procuring right-of-way were estimated at $500; and that that part of the proposed Sullivan slough ditch from the Sullivan slough to the Johnson ditch was to be abandoned and not constructed.

The relators thereupon demurred to this amended petition, which demurrer being overruled, the issues were completed by answer and reply, and a hearing was had on December 4, 1905. The court, on December 11, 1905, made findings of fact in favor of the commissioners, and ordered a jury to be impaneled to estimate the values of the lands to be taken, and separately determine the damages and benefits to lands not taken. Prior to the entry of this order, the commissioners asked leave to further amend their petition by alleging their intention of constructing a dam across the Johnson slough ditch, immediately west of its junction with the North Samish river ditch. The trial court did not immediately grant this request, but directed the commissioners to notify all defendants of their proposed amendment. Afterwards, on December 20, 1905, the matter came on further for hearing upon the question of the allowance of the amendment, and all parties having been notified and the relators appearing by their attorneys, the amendment was allowed. Thereupon a new hearing was had, at which it was stipulated that the evidence theretofore introduced should be considered by the court, and that additional evidence might be offered.

On both hearings the main contest was over that portion of the proposed North Samish river ditch lying north of its junction with the Johnson slough ditch. No estimate of the cost of this ditch, or in fact any of the ditches, was made by the engineer who had prepared the plat. At the hearing, the attorneys for the commissioners, without further amending their petition, stated that it was not their present inten-

tion to construct or complete any of the proposed system except that portion of the North Samish river ditch north of its junction with the Johnson ditch. Nevertheless, an order was made for the condemnation of the right of way for all the proposed ditches and spurs, except that portion of the Sullivan slough ditch which had been taken out by the first amendment of the petition. No showing was made as to the cost or size of the boxes or flumes at the various sloughs. At the close of all the evidence, the relators moved for a dismissal of the proceeding, which motion being denied, an order calling for a jury was again made, except that a modification was entered by authorizing the amendment of said proposed system by the construction of said dam across the Johnson slough ditch. Thereupon the relators applied to this court for a writ of certiorari to review the proceedings of the superior court.

Drainage district No. 16 was organized and all these proceedings have been had under the provisions of the act of 1895, Laws 1895, pp. 271-296; Bal. Code, §§ 3715-3754. The relators contend this act is unconstitutionl because, (1) it attempts to confer upon the court powers, and to impose upon it duties, which are in no sense judicial, but legislative; (2) that it imposes upon the jury and the court the duty of making assessments upon lands benefited by reason of the improvement, and that this also calls for the exercise of legislative and not judicial functions.

In support of the first contention, the relators insist that the provision in § 12 of the drainage law, for a finding by the superior court "that said improvement is practicable and conducive to the public health, welfare and convenience, and will increase the value of said lands for the purpose of public revenue," is a delegation of legislative authority. We do not think this contention can be sustained. The statute nowhere provides, nor does it contemplate, that the court shall initiate, devise or propose the system of drainage. Such system or proposed improvement is first adopted by the commissioners

and set forth in their petition. The constitution of this state, art. 1, § 16, makes it a judicial question to be determined by the court whether any purpose for which private property is sought to be taken is a public use. In arriving at this determination, the court is required by the statute to first judicially ascertain whether the proposed improvement is practicable, conducive to the public health, welfare and convenience, and will increase the value of the lands for the purpose of public revenue. This being done, the court then further finds whether the proposed use of the lands sought to be taken is public. The court does not originate, devise or adopt any system or plans, although it may incidentally approve those proposed by the commissioners. The relators have cited the case of *Territory ex rel. Kelly v. Stewart,* 1 Wash. 98, 23 Pac. 405, 8 L. R. A. 106, which we do not think applicable as the authority there conferred upon the court by statute was to create a municipal corporation, and was held to be a delegation of legislative powers. In further support of their contention, they cite a large number of decisions from various courts which, upon examination, show that the various statutes declared to be unconstitutional attempted to confer upon the courts power to incorporate villages or other municipalities, or to determine what lands should be added to or withdrawn from municipal corporations already organized. The supreme court of Ohio, in the well-considered case of *Zanesville v. Zanesville Telegraph etc. Co.,* 64 Ohio St. 67, 59 N. E. 781, 83 Am. St. 725, 52 L. R. A. 150, sustained as constitutional a statute which is subject to more severe criticism in this regard than the one now before us.

The relators further contend that the law of 1895 is unconstitutional for the reason that it imposes upon the court and jury the duty of making an assessment, in violation of art. 7, § 9 of the constitution. We do not think the relators' construction of the statute is warranted by its language or provisions. All the jury is required to do is to ascertain

separately the damages and benefits to each tract of land not taken, and also the value of the land to be taken. The court does not impose any assessment, but a transcript of the proceedings is certified to the county auditor, who proceeds as directed by § 16, and the ditch commissioners afterwards, by the provisions of the same section, designate when assessments shall become due and payable; they take the steps necessary to make the assessment, and collect the tax. We see no merit in the contention of the relators that the statute is unconstitutional in any respect.

It appears that, when the district was organized, the ditch commissioners gave bonds in the sum of $2,100 each; whereas § 5 of the original act of 1895 provides for bonds in the sum of $5,000 each. On the morning of the first trial, the commissioners filed new bonds in the sum of $5,000 each, which were approved. The relators contend that the district organization, and all prior proceedings of the commissioners were void by reason of their failure to qualify as required by law. The legislature of 1905 (Laws 1905, pp. 360-365), attempted to amend § 5 of the act of 1895, so as to require a bond of $500 instead of $5,000, and the respondents now rely upon such amendment. The relators, however, contend that said amended § 5 in the act of 1905 is unconstitutional, for the reason that it is not included in the title as contemplated in article 2, § 19, of the constitution. The title of the act of 1905 reads as follows:

"An act to amend sections 3, 9 and 24 of an act entitled, 'An act to provide for the establishment and creation of drainage districts and the construction and maintenance of a system of drainage, and to provide for the means of payment thereof, and declaring an emergency,' approved March 20, 1895, the same being sections 3717, 3723 and 3738 of volume 1 of Ballinger's Annotated Codes and Statutes of Washington, and declaring an emergency."

It will be seen that by this title the legislature only contemplated an amendment of §§ 3, 9 and 24, no amendment of

§ 5 being mentioned. Sections 3, 9 and 24 were amended in the body of the act, and also § 5. In a case exactly parallel to this, the supreme court of Kansas held such an amendatory act to be unconstitutional as to the section not mentioned in the title, but constitutional as to the other sections amended where the several sections were not dependent the one upon the other. *State v. Bankers etc. Ass'n,* 23 Kan. 499. Section 5, as sought to be amended by the act of 1905, is in no wise dependent upon the other sections, nor are any of them dependent upon it. We therefore hold that, as to the attempted amendment of § 5, the act of 1905 is unconstitutional, and that as to the remaining sections it is valid.

From this holding, it follows that the original § 5, as contained in the act of 1895, is still in effect, and the bonds to be given by the commissioners should each be $5,000. Nevertheless, the commissioners were *de facto officers,* and having entered into the possession of their offices and upon the discharge of their duties, their acts were not invalid, nor could they be questioned by the relators in this collateral proceeding. 28 Am. & Eng. Ency. Law, 355; 8 Am. & Eng. Ency. Law, 786-787. We have passed upon the constitutionality of the act of 1905 for the reason that we will hereinafter base an argument on § 9, as amended therein.

The relators contend that, after the original petition had been filed, no amendments changing the system proposed by the commissioners could be allowed. We think this objection is entirely too technical, for, while any system proposed by an original petition or an amended petition, upon which a hearing is finally had, should be either adopted or rejected by the court, there is no reason why the petition might not be amended for the purpose of permitting the commissioners to propose a change in the system, provided notice of such amendment be given to all of the defendants, and a full hearing be had on such amended petition. It certainly would save time and expense to amend instead of compelling the peti-

tioners to dismiss and commence an entirely new proceeding.

Upon the hearing there seems to have been considerable contention on the question as to whether the proposed system was more or less feasible than some other system which might have been proposed. The mere fact that some system not proposed might be feasible, does not deprive the court of authority to approve the system actually proposed, if it be feasible and proper, even though it might appear that a system not proposed would in some respects or to some degree be more feasible. The question before the court is whether the system proposed is feasible and substantially complies with the requirements of the statute.

The evidence shows that a dam has been placed across the mouth of the Edison slough, which the relators contend is a navigable stream. It appears that this slough is meandered, but it also appears that, during the greater portion of the year, it is dry except during high tide, at which time it is navigable for a short distance for small craft and floating logs. The dam was evidently built to keep out the high tide, so that the slough might be utilized as a reservoir to receive and hold water from the drainage system until it could be discharged during low tide. The dam was constructed without any authority from the United States government, and the relators contend that it cannot be used in the drainage system as its removal might be ordered by the government auauthorities. We do not think the evidence shows this North Samish river or Edison slough to be navigable to such an extent as to require the consent of the United States government to its obstruction by a dam.

The objections raised by the relators, which we consider of the most vital importance, are those wherein they contend that the court erred, (1) in overruling their demurrer to the amended petition; and (2) in finding that all the lands, real estate, and premises, sought to be appropriated and acquired for the purpose of rights of way, are necessary for the con-

struction of the improvements sought to be made by the commissioners. From an examination of the entire drainage act of 1895, and the amendments thereto, we conclude it to be the duty of the commissioners of the district to originate and select the proposed system of improvement which is to be submitted to the court, and the act contemplates that they shall submit an entire system, complete in all its details, for the approval or disapproval of the court. We think the petition in this regard, even as amended, is insufficient. From an examination of § 2 of the statute, it will be seen that, when it was proposed to organize the district, the petition for such organization was required to contain a brief description of the proposed system of drainage, designating the point of outlet, the route over which it is to be constructed, together with the proposed spurs and branches, and the termini thereof. Section 9, as amended in 1905, provides for the filing of a petition with the superior court, which shall show that such proposed system of drainage is necessary to drain all of the lands described in the petition, and that all lands sought to be appropriated for said right of way are necessary to be used in the construction and maintenance of the improvements. The petition must set forth the route and termini of this system, with a complete description thereof, together with specifications for its construction, with all necessary plats and plans thereof, with draughts of any artificial appliances or equipment necessary in aid thereof, together with the estimated cost of the proposed improvements and other facts and data.

We think that at no time has the petition, even as amended, given a complete description of the proposed improvement, with specifications for its construction. There can be no misunderstanding as to what the word "specifications" means in this connection. It is here applied to a public improvement, and its use, together with the use of the words "necessary plats and plans," and the further words providing for

draughts of any artificial appliances or equipment necessary in aid of the improvement, together with the estimated cost thereof, indicate that such a system with plans and specifications is to be prepared and submitted in the petition as will enable the commissioners, in the event of its approval and adoption, to proceed by contracting for and constructing the improvement without change.   There has been no system with plans and specifications, draughts and drawings, submitted here which would enable the commissioners to proceed with this improvement unless they are to prepare further details, plans and specifications after the court and jury have acted. By section 14 it is provided that, in case the damages or amount of compensation for the right-of-way, together with the estimated cost of the improvement, amount to more than the maximum amount of benefits which will be derived from said improvement, the court shall dismiss the proceedings. The estimated cost of the improvement mentioned in this section undoubtedly means the estimated cost as shown by the petition.   There is no showing here of the estimated cost. The engineer who made the plan never made any such estimate, nor was he able to testify what the probable cost would be.   The only evidence upon this point was given by one of the commissioners, who was not shown to be an expert or competent to testify, and he made no estimate of the cost of the entire system.   Section 18 provides that, after the filing of the certificate with the county auditor, the commissioners of the drainage district shall proceed with the construction of the said improvement, evidently meaning the improvement proposed by the petition.   Section 19 provides that the work shall begin at the outlet thereof, and shall be completed towards the terminus of the system with all expedition possible, evidently contemplating that the entire system, as proposed by the petition, shall be speedily completed.   But here it is conceded that the commissioners intend to construct only a portion of one ditch.   It is further provided by section 19

that no change shall be made in the proposed improvement except on the written consent of all the land owners to be benefited thereby. Without their consent, substantial changes can only be made by filing a new petition, setting forth such proposed changes, and further proceedings must be had upon such petition. This evidently contemplates that the original system proposed in a petition, and approved by the court, shall be followed at all times and that a substantial modification can be made only in the manner provided by the statute.

Farnham, in Vol. 2 of his work on Waters and Watercourses, at § 205, says:

"To make a drainage improvement of any benefit, it must be constructed on a plan that will be effective to the accomplishment of the end in view. Taxpayers have a right to demand that, before the enterprise is entered upon, it shall have been determined to be practicable, and that the general character of the improvement shall be designated. When they are entitled to pass upon the question whether or not the improvement shall be made, they can exercise no intelligent judgment until they know the plan; and, if they are entitled to no voice in the matter, they may make effective opposition in case the plan is defective. They also have a right to have the plans fixed so that no departure from them shall be effected during the progress of the work. The courts will not interfere with a plan which has been adopted in good faith, and which will effect the intended object, although it may not be the best that could be devised."

This language is taken from the chapter on drainage, which includes systems of the character here involved, although it is also applicable to sewerage in cities and other municipalities. In § 210 Mr. Farnham says that,

"Knowledge of what is to be done is a necessary ingredient in passing judgment upon the feasibility of any plan for public improvement. Therefore, it is desirable that the details of an intended improvement should, so far as possible, be worked out and stated in a formal manner before the proposition of its adoption is submitted to the voters, or to the authorities to whom the matter is committed. The taxpayer has

a right to have this done in order that he may know whether to acquiesce in the proceeding, or to take steps to contest it."

In § 211 he also lays down the doctrine that the cost of the improvement must be estimated. This seems to be contemplated by the statute of 1895. In § 212 Mr. Farnham also says the route should be described; in § 213, that the dimensions shall be fixed. We think these principles announced by Mr. Farnham are in direct harmony with the provisions of the statute which we are now considering. In short, our construction is that a duty devolves upon the commissioners to have a full and complete system prepared by a competent surveyor or engineer and draughtsman, whom they are authorized by § 10 to employ; that this system shall be complete, shall contain plans, specifications, details, and estimates, so that, if approved by the court, contracts may be made and the work performed in accordance therewith. It then devolves upon the court to pass upon the practicability of this improvement, as contemplated by § 12, and determine whether the use to be made of the lands sought to be appropriated is a public use, and to empanel a jury to assess the damages and benefits and fix the value of the lands taken. Thereafter it becomes the duty of the commissioners, if the action is not dismissed, to proceed with the improvement in accordance with the plans submitted to and approved by the court, without any substantial change. The petition in this case does not comply with the requirements of the statute, nor does the proof seem to be sufficient to support the findings. The trial court erred in its findings, and in ordering that a jury be empaneled to assess the damages and benefits, and ascertain the value of the property.

It is not necessary that this action should be dismissed and the district dissolved, as demanded by the relators. We see no reason why the respondents should not be permitted to exercise their option of dismissing and commencing a new proceeding, or taking leave to amend their petition herein

within such reasonable time, as they may be able, by an amended petition, to submit to the court a proper system in accordance with the views herein expressed.

It is ordered that the rulings and orders of the trial court be reversed, and that this cause be remanded for further proceedings in accordance with this opinion.

MOUNT, C. J., RUDKIN, FULLERTON, ROOT, DUNBAR, and HADLEY, JJ., concur.