[No. 12248.   Department Two.   December 11, 1914.]

THE STATE OF WASHINGTON, *on the Relation of John G. Hardesty et al., Plaintiff*, v. THE SUPERIOR COURT FOR SPOKANE COUNTY, *Respondent*.[1]

DRAINS—DISTRICTS — POWERS — CONDEMNATION — LANDS OUTSIDE DISTRICT—STATUTORY PROVISIONS. A drainage district has the power to condemn a right of way outside of the district for the purpose of an outlet for the main ditch, where, by Rem. & Bal. Code, § 4143, the district was given the right of eminent domain generally, without limitation as to whether the property was within or without the district, and later the statute was amended by 3 Id., § 4138, providing that the point of outlet may be within or without the district, without in terms amending the section relating to eminent domain; otherwise the obvious purpose of the legislature in adding the amendment would be defeated by a too restrictive construction.

SAME — DISTRICTS — PROCEEDINGS—RESOLUTIONS—CONDEMNATION. The fact that a resolution of drainage commissioners is technically defective in not providing for the condemnation of lands outside the district for an outlet to the main ditch, is immaterial where the preliminary resolutions and petition contemplated and described an outlet outside of the district, the question whether the lands were reasonably necessary was duly raised, and no one was prejudiced.

SAME—DISTRICTS—PETITION—SUFFICIENCY. Under 3 Rem. & Bal. Code, § 4145, providing that a petition for the construction of a drainage system shall set forth complete specifications and all necessary plats and plans for the construction thereof, it is sufficient if the specifications enable commissioners to proceed by contracting for constructing the improvement without change.

Certiorari to review a judgment of the superior court for Spokane county, Blake, J., entered August 6, 1914, adjudging a public use and necessity in condemnation proceedings, after a trial to the court.   Affirmed.

*John Pattison* and *Smith & Mack,* for relator.

*Alex M. Winston* and *Nuzum, Clark & Nuzum,* for respondent.

[1]Reported in 144 Pac. 708.

MAIN, J.—The purpose of this action was to condemn a right of way for a drainage ditch. After a hearing, the superior court entered a judgment of necessity and directed the calling of a jury to assess the damages and benefits. To review this judgment, the cause is brought here by certiorari.

Reorganized drainage district No. 1, in Spokane county, Washington, was organized on or about the 9th day of December, 1913. The petition for the organization of the district, addressed to the county commissioners, and the order of the county commissioners approving the plans for the system of drainage proposed, contemplated and described the continuation of the main ditch to a point without the boundaries of the district. The proposed ditch was to be extended beyond the boundaries of the district for the purpose of securing an outlet.

After the board of county commissioners had approved the plan submitted by the petition to it, an election was held for the purpose of electing drainage district commissioners. After the drainage district commissioners had been elected and qualified, they passed a resolution which provided, among other things, that reorganization drainage district No. 1 "proceed to construct a system of drainage within the district, being substantially the system described in the petition for the organization of this district as approved by the board of county commissioners of Spokane county, Washington." The resolution further provides for the condemnation of the necessary property and authorized the chairman of the board to institute proceedings in the superior court to that end. The petition filed in the superior court in pursuance of this authority described not only the land situated within the boundaries of the district which it would be necessary to take for the drainage ditch and its laterals, but also "that without the boundaries of said district." The owners not only of the land within the district, but those without affected by the construction of the drainage ditch, were made parties to the proceeding. To the petition there

was attached plats, plans, and specifications for the drainage system.

The questions here presented for determination are: (1) Did the drainage district have the right to condemn a right of way without the boundaries thereof for the purpose of an outlet for the main ditch? (2) Was the failure of the drainage commissioners to set out specifically in the resolution the intention to condemn property without the boundaries of the district fatal to the proceeding? (3) Were the plans and specifications sufficient?

I. The question whether the district had the right to condemn lands without its boundaries is one of statutory construction. The drainage district act was passed at the legislative session for the year 1895. Rem. & Bal. Code, §§ 4137 to 4179 (P. C. 155 §§ 1 to 79). This act provided that all drainage districts organized under its provisions should have the right of eminent domain with the power to cause to be condemned and appropriated private property for the use of the district in the construction and maintenance of a drainage system. Rem. & Bal. Code, § 4143 (P. C. 155 § 13). This section of the statute gives the right of eminent domain and the power to condemn without limitation as to whether the property may or may not be situated within the boundaries of the district. The act as originally passed did not provide for the construction of an outlet without the boundaries of the district. At the legislative session for the year 1913 (Laws of 1913, p. 260; 3 Rem. & Bal. Code, § 4138), certain sections of the act were amended. One of these was § 4138; and it was therein expressly provided that the "point of outlet may be within or without the boundaries of said district."

It is argued that since the legislature did not also amend the eminent domain section of the original act, and in terms extend the right to condemn property without the boundaries of the district for an outlet, that no such right exists. It is said that eminent domain statutes should be strictly con-

strued; and unless the power to condemn property is expressly given, it does not exist. With this general statement of the law, little criticism can be made. But an eminent domain statute should be given such a construction as will, if possible, carry into effect the intent and manifest purposes for which it was passed. The statute should not be so literally or strictly construed as to defeat the obvious purpose of the legislature.

In 1 Lewis on Eminent Domain (3d ed.), § 388, it is said:

"All grants of power by the government are to be strictly construed, and this is especially true with respect to the power of eminent domain, which is more harsh and peremptory in its exercise and operation than any other. 'An act of this sort,' says Bland, J., 'deserves no favor; to construe it liberally would be sinning against the rights of property.' But, as in other cases, such a construction will, if possible, be given to an act as will carry into effect the chief and manifest purpose for which it was passed, and such as will give effect to all its words. It will be so construed as to support its validity rather than otherwise. 'Statutes granting these powers are not to be construed so literally, or so strictly as to defeat the evident purpose of the legislature. They are to receive a reasonably strict and guarded construction, and the powers granted will extend no further than expressly stated, or than is necessary to accomplish the general scope and purpose of the grant. If there remains a doubt as to the extent of the power, after all reasonable intendments in its favor, the doubt should be solved adversely to the claim of power.'"

It was, no doubt, the legislative thought that, when it provided for an outlet without the boundaries of the district, such an outlet might be acquired by the exercise of the power of eminent domain under the section of the statute which gave that power to the district generally. The amended sections of the act became a part of the act. To hold that, since the right of eminent domain was not expressly by amendment extended to include the right to condemn property without the boundaries of the district for an outlet for the main

ditch, no such power exists, would be a construction which is too restrictive. It would defeat the obvious purposes which the legislature had in mind in making the amendment.

In 4 McQuillin, Municipal Corporations, § 1495, it is said:

"While there is no settled rule in respect to this question, it would seem that the rule supported by the better reasoning is that if the power exists to construct public works or improve property outside the municipal limits, and the statute or charter expressly or by necessary implication authorizes the condemnation of property within the corporate limits for such purposes, then the municipality is impliedly authorized to condemn property outside the limits for such purposes."

II. From the excerpt above quoted from the resolution passed by the drainage commissioners, it appears that such resolution did not specifically provide for the condemnation of the outlet without the boundaries of the district. The petition presented to the board of county commissioners by the property owners for the organization of the district, as well as the resolution of the board of county commissioners approving the same, contemplated and described an outlet without the boundaries of the district. The resolution which it is claimed was insufficient provided that the drainage system to be constructed should be "substantially the system described in the petition for the organization of this district as approved by the board of county commissioners." The relators had an opportunity to raise, and did raise, the real question in the case, that is, whether there was a necessity to take the lands for the purposes of the district. While the resolution is technically defective, if a resolution is necessary, the rights of the relators have been in no sense prejudiced thereby. From the initiatory steps to the findings and judgment of the superior court, it was at all times contemplated that the outlet for the main ditch should be without the

boundaries of the district. This objection is too technical to receive favorable consideration.

III. It is lastly contended that the plans and specifications were not sufficient: Section 4145 of the statute (3 Rem. & Bal. Code, § 4145), as amended, provides that the petition for the construction of the drainage system which shall be filed in the superior court, among other things, shall set forth "the route and termini of said system, with a complete description thereof, together with specifications for its construction, with all necessary plats and plans thereof with drafts of any artificial appliances or equipment necessary in aid thereof, . . ." This is the same language that appeared in the original act. Construing that statute in *State ex rel. Matson v. Superior Court*, 42 Wash. 491, 85 Pac. 264, it was held, that the plans and specifications should be sufficient to "enable the commissioners in the event of its approval and adoption to proceed by contracting for and constructing the improvement without change." Without reviewing the evidence in detail upon this question, it may be said that the testimony supports the position that the plans and specifications in this case meet the requirements of the statute as construed in the case just cited.

The judgment will therefore be affirmed.

MOUNT, PARKER, and GOSE, JJ., concur.