[No. 16992.   Department Two.   August 31, 1922.]

THE STATE OF WASHINGTON, *on the Relation of Nelson Abbott et al., Plaintiff,* v. THE SUPERIOR COURT FOR SKAGIT COUNTY *et al., Respondents.*[1]

DRAINS (5, 9)—ESTABLISHMENT—PROCEEDINGS—ORDERS OF COUNTY BOARD.  An order of the county commissioners declaring that a drainage district should be organized and declared to be a drainage district, under the laws of the state, and designating its number, is a sufficient order establishing the district.

SAME (11)—ESTABLISHMENT—FRAUD—BENEFITS TO PROPERTY.  No legal or constructive fraud is shown in the establishment of a drainage district where there was no evidence that the ditch was made with reference to special benefits to any person, and the question whether parties included would be benefited is to be determined when considering the assessment and benefits.

NAVIGABLE WATERS (1) — OBSTRUCTIONS — CONSENT OF FEDERAL GOVERNMENT.  A slough which is dry a considerable portion of the time, and navigable, if at all, only at high tide, is not navigable in the sense that it would require the consent of the United States for its obstruction by an irrigation district.

EMINENT DOMAIN (119)—DRAINS—RIGHT OF WAY—DESCRIPTION—SUFFICIENCY.  In condemnation proceedings for a ditch for an irrigation district, it is only necessary to describe the land with reasonable certainty, and this is done without referring to a dike on the premises, and by a description of a strip of land sixty feet wide along a certain course and distance fixing the center line thereof as the center line of a certain slough.

DRAINS (5, 6)—ESTABLISHMENT—VALIDITY.  Establishment of a drainage district cannot be objected to on account of the impracticability of draining certain lands within the district.

SAME (5, 6)—ESTABLISHMENT—BOUNDARIES.  Under Rem. Comp. Stat., §§ 4298, 4307, there is no requirement that the boundaries of an assessment district, as fixed by the drainage commissioners, shall be the same as the boundary of the district as fixed by the county commissioners.

Certiorari to review an order of the superior court for Skagit county, Alston, J., entered December 6, 1921,

[1]Reported in 209 Pac. 17.

adjudging a public use and necessity in condemnation proceedings. Affirmed.

*Henry Alberts McLean* and *Byers & Byers,* for relators.

*Wright, Kelleher; Allen & Hilen,* and *Thos. Smith,* for respondents.

MAIN, J.—This action is brought here by certiorari to review an order of the superior court of Skagit county, decreeing a public necessity for the condemnation of certain rights of way for drainage purposes, and authorizing the commissioners of drainage district No. 19 to proceed with the condemnation of such rights of way and the assessment of benefits against the lands which will be benefited by the proposed improvement. Drainage district No. 19 was organized during the year 1917, and is located in the western end of Skagit county. Within its boundaries as originally established there were comprised approximately 7,000 acres of land. By the proposed drainage system the waters collected in the ditches will ultimately be discharged into Puget Sound. This will be through the agency of Higgins and Indian sloughs. Indian slough is in the northwestern part of the district and empties into tide water, flowing in a general northwesterly direction. Higgins slough is in the southwestern portion of the district and flows in a westerly direction, making a considerable bend or curve. The latter slough is much more crooked than is the former. The lands embraced within the districts are flat and swampy. There is a point where the surface water on the lands divides by reason of a slight elevation, the water to the north of this going into Indian slough, and that to the south ultimately reaching Higgins. In the proposed plan of construction the ditch will be cut across this slight

elevation so that the portion of the water that would only reach Higgins slough is diverted to Indian slough. At a certain point on each of these sloughs it is necessary to construct a dam to prevent tide water extending up the slough. The district as originally defined provided for the construction of these dams at a point nearer the mouth of these sloughs than do those now proposed.

The reason for the change of the location of the dams was that the Federal government, after investigation, refused to allow dams to be built at the points where they were originally contemplated. When the location of the dams was fixed farther up the slough, the drainage commissioners altered the western boundary of the district and excluded therefrom all the land which would be below the proposed dams. Some time after the district was organized, the drainage commissioners brought an action in the superior court for the purpose, as above stated, of condemning the necessary rights of way and causing the benefits from the proposed improvement to be assessed upon the property benefited.

The relators are contesting the right to make the condemnation, and from an adverse judgment have brought the case here for review.

The first contention of the objectors is that drainage district No. 19 was not legally organized. Assuming, without deciding, that this question may be presented in this proceeding, we will pass directly to the consideration of the merits of the contention. It is claimed that the district is void for two reasons: first, that the county commissioners never made a specific order establishing the district; and second, that the commissioners did not in any order made by them find all the facts which the statute requires. The proceedings before the county commissioners resulting in the

organization of the district are before us as an exhibit. It is disclosed therein that the commissioners did in an order declare ''that said drainage district should be organized and declared to be a drainage district under the laws of the state of Washington, and to be known as drainage district No. 19, of Skagit county, Washington.'' As to the contention that the commissioners did not in an order find all the facts which the statute requires, it may be said that, in carefully comparing the record of the proceedings with the requirements of the statute, we find no merit in this contention. The county commissioners found as required by the statute the things which it was necessary for them to find. The summary of the trial judge upon this question succinctly presents the matter, and we take the liberty of adopting it wherein he said:

''As above stated in my opinion the statute has been substantially complied with. In fact, I believe the commissioners aided by the engineer and counsel have to the very best of their ability complied with the statute, and for the court to hold at this time such district has not been legally organized or that the steps leading up to the institution of this action have not been in accordance with the statute, or that the system as outlined is not conducive to public health, welfare, etc., would be, in my opinion, a usurpation of authority by the court. The vast majority of the people interested desire to prosecute this drainage district and they are attempting to do so as outlined by the legislative authority of this state.''

It is next contended that the establishment of the district and the proceedings thereunder disclose a legal or constructive fraud. In this connection attention is called to the location of the main ditch that carries the water from a point in the watershed of Higgins slough and empties it into Indian slough, also that the property owners in the watershed of Indian slough will not

be benefited and that the system is so arranged as to specially benefit one or more of the drainage district commissioners. There is no evidence which would sustain the finding that the location of the ditch was made with reference to the special benefits to any person. Whether the ditch was properly located in the place in which it was is an engineering matter, with which this record presents no reason why we should interfere. As to the property owners in the Indian watershed, whether they will be benefited by the drainage system as planned is a matter which will be considered when the question of assessments and benefits is being determined. The record presents no facts which would sustain the charge of legal or constructive fraud.

The next contention is that the plans provide no sufficient or legal outlet. In support of this contention it is suggested that the time covered by the permit issued by the Federal government has expired, and that therefore there is no authority to construct the dam. It is further contended that the permit, if effective, would be inoperative, since it was made conditioned upon compliance with the state law, and there is no state law covering the matter. The argument on this point, if we have gathered it correctly, is based on the assumption that the two sloughs which it is proposed to dam are navigable streams. It may be assumed that, below the points where the dams are to be constructed, the streams are navigable. Above these points they are non-navigable streams. During a considerable portion of the time they are dry, and, if navigable at all, are so during periods of high tide only. Under this set of facts, a permit from the Federal government was not necessary. In the case of *State ex rel. Matson v. Superior Court,* 42 Wash. 491,

85 Pac. 264, speaking upon a similar question, it was said:

"The evidence shows that a dam has been placed across the mouth of the Edison slough, which the relators contend is a navigable stream. It appears that this slough is meandered, but it also appears that, during the greater portion of the year, it is dry except during high tide, at which time it is navigable for a short distance for small craft and floating logs. The dam was evidently built to keep out the high tide, so that the slough might be utilized as a reservoir to receive and hold water from the drainage system until it could be discharged during low tide. The dam was constructed without any authority from the United States government, and the relators contend that it cannot be used in the drainage system as its removal might be ordered by the government authorities. We do not think the evidence shows this North Samish river or Edison slough to be navigable to such an extent as to require the consent of the United States government to its obstruction by a dam."

It is next contended that, since the water is to be diverted from one watershed to another, it constitutes an additional servitude upon the lands in the watershed of Indian slough, without legal right. Much of the argument on this point and the authorities cited relate to the question of the flooding of lands. The plans in this case do not contemplate flooding. The purpose is to carry the water which will be diverted from the watershed of Higgins slough through Indian slough. If this additional water thus results in legal damage to any of the property owners in the watershed of Indian slough, it is a proper matter to be determined by the jury in the condemnation proceedings. The evidence will not sustain a finding that the diverting of the water from one watershed to the other would result in an overflow or flooding of any of the lands of the objectors.

The next point is that the right of way sought to be condemned has no proper description, and it is impracticable to acquire it by the description given. One objection to the description is that it makes no mention of a large dike which extends along Indian slough for a distance of one-half to three-fourths of a mile. It was unnecessary to specifically refer to the dike in the description, because if the ground upon which the dike was constructed were described it would include the dike. Another objection is that the description given provides for the taking of a strip of land sixty feet wide and, along certain courses or distances, fixes the center line thereof as the center line of Higgins slough. To this description it appears that only one of the relators is objecting. It seems to us that the land.proposed to be taken is described with reasonable certainty, and this is all that the law requires. *State ex rel. Oregon R. & Nav. Co. v. Superior Court,* 45 Wash. 321, 88 Pac. 334.

The next contention is that it will be impracticable for certain of the land on the westerly side of Indian slough to be drained by the system. Whether any of the lands within the district will be benefited by the proposed improvement must be determined when the question of benefits is upon trial. That question is not before us in this proceeding.

Finally, it is argued that the boundary lines of the drainage district had been changed by the drainage commissioners without any authority of law. In support of this contention it is pointed out that the boundaries of the assessment district as fixed by the drainage commissioners did not coincide with the boundaries of the drainage district as fixed by the county commissioners. As already stated, the dams in the two sloughs were moved some distance up from their

original locations.   In the assessment district as fixed by the drainage district commissioners, the land to the west or below the dams is not included in such district, even though it was within the boundaries of the original district.   Section 4298, Rem. Compiled Stat., among other things, provides that any portion of the county requiring drainage which contains five or more inhabitants and freeholders therein may be organized into a drainage district.   The subsequent sections provide the method of procedure by which such district shall be organized.   One of the steps in the organization of the district is the fixing of the boundaries thereof at a hearing before the board of county commissioners, after notice, that body being given the power to change the proposed boundaries as they may deem proper. After the district is organized, the drainage commissioners are elected to carry on the affairs of the district.   Section 4307, Rem. Compiled Statutes, provides that, when it is desired to prosecute the construction of a drainage system, the drainage commissioners shall file in the superior court of the county a petition setting forth therein, among other things, the names of the landowners who will be benefited by the improvement.   There is no provision in the law, so far as we are advised, which requires the boundaries of the assessment district as fixed by the drainage commissioners to be the same as the boundaries of the drainage district as fixed by the county commissioners. It is obvious that the land below where the proposed dams are to be constructed will not be benefited by the improvement, and there is no reason why such land should have been included within the proposed assessment district.

The judgment will be affirmed.

PARKER, C. J., MACKINTOSH, HOVEY, and HOLCOMB, JJ., concur.