## IN RE WESTON.

### RYAN, CONTESTANT, v. WESTON, CONTESTEE.

28    207
f28   222
28    207
L30   538

(No. 1,927.)

(Submitted March 19, 1903.   Decided May 18, 1903.)

*Constitution — Supreme Court — Jurisdiction — Original — Appellate — Supervisory Control — District Judges — Disqualification—Bias or Prejudice—Order Substituting One District Judge for Another.*

1. The Act of the Eighth legislative assembly, entitled "An Act to provide for the designation and appointment of a district judge to temporarily hold court in another district than his own, and to perform the official duties of the district judge of such district, where such judge is biased or prejudiced or for any cause disqualified from performing the same" (Laws of 1903, Chapter 42), *held* to be unconstitutional.

2. Constitution, Article III, Section 29, providing that "the provisions of this constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise," is conclusive upon the legislature, and prevents the enactment of any law which has for its purpose the extension or limitation of the powers conferred by the constitution.

3. The power to issue, hear, and determine the six original writs enumerated (Constitution, Art. VIII, Sec. 3), marks the limit of the original jurisdiction of the supreme court.

4. Under Constitution, Article VIII, the ordinary appellate power of the supreme court is limited to a review of the decision of the lower court, and a judgment affirming, modifying or reversing such decision,—with the strictly ancillary power to issue, hear and determine such original and remedial writs as may be necessary or proper to the complete exercise of this appellate jurisdiction.

5. Under Constitution, Article VIII, Section 2, the power of supervisory control is lodged in the supreme court sitting as an organized judicial body, and such power operates only upon inferior courts; it cannot extend to or affect any other body or any individual or individuals.

6. In the absence of a statute declaring bias or prejudice on the part of a judge to be a disqualification, bias or prejudice does not constitute a disqualification.

7. Under Constitution, Article IV, Section 1, the legislature cannot impose upon the supreme court, or its justices, the performance of an act not judicial in its character but purely ministerial or executive.

8. *Quaere:* Has the supreme court, under its power of supervisory control, power to control a lower court, by prohibiting the judge thereof from proceeding with the trial of a cause, if it were made manifest that he was for any reason incapable of giving either of the parties a fair trial?

ELECTION contest by Patrick V. Ryan against John Weston, in which contestant instituted an original proceeding in the

supreme court under Chapter 42, Laws of 1903, for the appointment of a district judge to temporarily hold court in the district in which the contest was commenced. Proceedings dismissed.

## Statement of the Case.

This is an original proceeding instituted in this court by Patrick V. Ryan for the purpose of securing an order designating a judge of some district other than the Second judicial district, to try and determine the contested election case of *Ryan v. Weston.* The proceeding is taken under the provisions of an Act of the Eighth legislative assembly of Montana, designated as "Substitute for Senate Bill No. 71," entitled "An Act to provide for the designation and appointment of a district judge to temporarily hold court in another district than his own, and to perform the official duties of the district judge of such district where such judge is biased or prejudiced or for any cause disqualified from performing the same," which is as follows:

"Be it enacted by the Legislative Assembly of the state of Montana:

"Section 1.   When a party to a civil action or proceeding pending in any district court of the state has reason or cause to believe that such party cannot obtain a fair and impartial trial or determination of such action or proceeding, or of any motion, or application therein made, by reason of the bias or prejudice arising from any cause, of the district judge presiding in the court, or any department thereof where such action, proceeding, motion or application is pending, or where such judge so presiding is, from any other cause, disqualified from acting therein, such party or his attorney may first request the judge of the district court wherein such action, proceeding, motion or application is pending, to sign a petition addressed to, and asking, the supreme court, without stating grounds therefor, to designate and appoint a judge of some other ju-

dicial district of this state to hear, try and determine such action, proceeding, motion or application, and if such petition be signed by the district judge to whom the same is presented the supreme court shall on presentation thereof make an order designating and appointing the judge of some judicial district of this state to hear, try and determine such action, proceeding, motion or application as in this Act provided; but if the district judge to whom such petition is presented refuses, or for the period of three days fails, to sign said petition, the party on whose behalf the same is presented may, by a petition verified by the affidavit of petitioner or his agent or attorney setting forth such bias or prejudice or other grounds of disqualification and the facts upon which the same is based, and the failure or refusal of the judge of the district court or department thereof wherein such action, proceeding, motion or application is pending to sign a petition for the appointment of another judge as hereinabove provided, petition the supreme court, or the justices thereof, to designate and appoint a district judge of some other judicial district of this state, to act in such cause; and the supreme court, or any two justices thereof, may upon a summary hearing of such petition in court or chambers, with any further showing which may be by the court or justices deemed proper, make an order designating and appointing the judge of any judicial district of the state other than that in which such action, proceeding motion or application is pending, to appear in the district in which such action, proceeding, motion or application is pending, at some proper and convenient time and preside at the trial of such action, or other matter mentioned in the order, and to determine the same, and to do any and all judicial acts necessary, proper and lawful in and about the adjudication and determination thereof, and in and about administering proper relief therein with the same force and effect as if done or ordered by the judge of the district wherein such matter is pending.

"Sec. 2.    Upon such order being made and filed in the action or proceeding therein mentioned the judge or judges of the dis-

trict court wherein such action or proceeding is pending shall not proceed further in such action or proceeding or try or decide the same, nor do any other judicial act therein except upon consent of the parties thereto or their attorneys in writing.

"Sec. 3. The district judge designated and appointed in the order of the supreme court in the cases in this Act provided shall have full power and authority to preside at the trial of and to try and decide such action, proceeding, motion or application mentioned in such order and to do all acts and things lawful and proper to be done, in court or at chambers, in and about the trial, adjudication, decision and granting and administering all proper and lawful remedies and relief and enforcing the same in said action, proceeding, motion or application mentioned in such order of the supreme court as could be done by a judge of the judicial district wherein such action, proceeding, motion or application is pending; and upon receiving a copy of such order of the supreme court it shall be the duty of the district judge therein designated and appointed, to appear at the county seat of the county in which such action, proceeding, motion or application is pending, at some proper and convenient time and try the same, but if from any cause he should fail so to do, the supreme court may by its order designate another district judge to do the same, who shall be vested with like powers in such action, proceeding, motion or application: provided, that neither party shall petition the supreme court more than once in the same action or proceeding to designate and appoint another judge to act therein under the provisions of this Act, except in cases where the district judge previously appointed to act therein has failed from any cause so to do.

"Sec. 4. A district judge designated and appointed to hold court in another district pursuant to the provisions of this Act shall be paid his actual expenses, to be allowed by the state board of examiners and paid in the same manner as his regular salary.

"Sec. 5. This Act shall be in full force and effect from and after its passage and approval." (Chapter 42, Laws of 1903.)

Upon the filing of the petition this court, on its own motion, directed an order to be issued to the district judge in whose department the case of *Ryan* v. *Weston* is pending, and to the contestee, to show cause, if any they had, why the relief prayed for should not be granted, and directed a hearing upon the return thereof. At the hearing counsel for the district judge and for the contestee filed a motion to dismiss the proceedings, upon the ground that substitute for Senate Bill No. 71 is unconstitutional, and that this court has no jurisdiction to entertain the petition or to grant the relief prayed for. Upon this motion the questions involved were argued and submitted for determination.

*Mr. W. E. Carroll,* and *Mr. E. N. Harwood,* for Contestant.

*Mr. Lewis P. Forestell, Messrs. Toole & Bach,* and *Messrs. Carpenter & Carpenter,* for Contestee.

MR. JUSTICE HOLLOWAY, after stating the case, delivered the opinion of the court.

"The source of all power vested in the supreme court is the constitution of the state, and in it must be found the measure of jurisdiction." The foregoing succinct statement taken from the brief of the petitioner in the proceedings No. 1,928 (*In re Application of the Boston & Montana Consol. Copper & Silver Min. Co.*, 28 Mont. 221, 72 Pac. 1103), correctly lays the foundation for determination of the question involved in this controversy. The general rule, repeatedly affirmed and now well understood, that the constitution of the United States represents a grant of power by the several states and the inhabitants thereof to the general government, while the constitutions of the several states operate upon the lawmaking branches of those governments as limitations of authority, must be understood and considered in this connection with the qualification which our own state constitution has attached, that "the provisions of this constitution are mandatory and prohibitory, unless by express

words they are declared to be otherwise." (Section 29, Article III, Constitution of Montana.) This declaration can have but one meaning—that, with reference to these subjects upon which the constitution assumes to speak, its declarations shall be conclusive upon the legislature, and shall prevent the enactment of any law which has for its purpose the extension or limitation of the powers which they confer. An examination of our constitution discloses an attempt on the part of its framers to define the jurisdiction of this court, and such definition must be accepted as a final declaration upon that subject: (1) The supreme court shall have appellate jurisdiction only, except as otherwise provided by this constitution (Section 2, Article VIII), and shall have power to issue, hear, and determine such original and remedial writs as may be necessary or proper to the complete exercise of its appellate jurisdiction (Section 3, Article VIII). (2) It shall have general supervisory control over all inferior courts, under such regulations and limitations as may be prescribed by law. (Section 2, Article VIII.) (3) It shall have discretionary power to issue, hear and determine writs of *habeas corpus, mandamus, quo warranto, certiorari,* prohibition, and injunction. (Section 3, Article VIII.)

For the purpose of this discussion, these are transposed, and will be considered in this order: (1) original jurisdiction; (2) appellate jurisdiction; and (3) supervisory jurisdiction.

## 1. Original Jurisdiction.

The power to issue, hear, and determine the six original writs enumerated above marks the limit of the original jurisdiction of this court. The scope and purpose of these writs are too well defined and understood to require particular attention. They are essentially prerogative writs. They were so denominated at common law, and issued only on behalf of the state; and, if used for private remedy, it was only upon leave granted, and then in the name of the state. They were never presumed to be ordinary writs applicable to private controversies, and issuable

as a matter of course. (*Attorney General* v. *Railroad Companies,* 35 Wis. 425; *State ex rel. Clarke* v. *Moran,* 24 Mont. 433, 63 Pac. 390; *State ex rel. Anaconda Copper Mining Co. et al.* v. *Dist. Court,* 25 Mont. 521, 65 Pac. 1020.)  It can hardly be seriously contended that the exercise of the appointing power sought to be conferred by the Act under consideration would fall within the purview of any one of these writs, or within the original jurisdiction of this court.  Indeed, a direction of this court designating a nonresident judge to sit in lieu of the one complained of would not be a writ at all, but simply an order which might be signed by the justices themselves, and which would not even require the seal of the court to authenticate it.  It may be true that, upon the failure of the re ident judge to sign a petition for his own displacement, the original jurisdiction of this court is sought to be invoked, or, in other words, in that instance the proceedings instituted in the supreme court partake of the nature of original proceedings; but, if so, the power of this court to act would have to be lodged somewhere, and be capable of definite determination. We must decline to employ any one of the original writs mentioned above for the purposes of this Act.  The fact that the federal courts and certain state courts of last resort do make use of the writ of *mandamus* or *certiorari* for the purpose of general supervision of inferior courts will not justify us in deflecting the purpose of those writs from well-defined channels, especially in view of the express grant of supervisory control to this court in plain and unmistakable terms, which, in the absence of legislative enactment defining the mode of proceeding, may be exercised by means of such writ or process as for that purpose may be invented.

## 2.  Appellate Jurisdiction.

Upon appeal to this court in the ordinary course of litigation, the full measure of relief which may be granted is a review of the decision of the lower court and a judgment of this court

affirming, modifying, or reversing the decision. Further than this we cannot go. (*State ex rel. Whitcside* v. *District Court,* 24 Mont. 539, 63 Pac. 395.) The Act in question, however, does not purport to invoke the appellate power of the supreme court. Under its provisions every litigant is given two opportunities to secure a nonresident judge to try his cause: First, upon the petition of the resident judge himself; or, second, upon the petition of the litigant, addressed directly to this court, in case the resident judge refuses to sign the petition. In the first instance the supreme court has nothing to do —no discretion to exercise, no deliberation to indulge, no judgment to form—but must make the appointment. In so doing we are not reviewing the action of the district judge, but merely acting on his suggestion or at his dictation. In the event the resident judge refuses or neglects to sign the petition, the only remedy sought by resort to this court is to have the appointment made without reference to his wishes. The Act does not assume to require the resident judge to sign the petition. He may do so or not, but upon his refusal no error can be predicated; and, if no error is charged, no review can be had. There can be no affirmance, modification, or reversal of the order of the resident judge, when none has been made. If the Act required him to do something, his refusal might be overcome by appropriate action, but a matter which is left purely to his discretion may not be controlled by the ordinary appellate power of this court. As an incident of and ancillary to the ordinary appellate jurisdiction of the supreme court, the power has been conferred to issue, hear, and determine such original and remedial writs as may be necessary or proper to the complete exercise of this appellate jurisdiction. But this power is only auxiliary. An action must be in this court on appeal, or an appeal sought to be perfected, before this ancillary or subsidiary jurisdiction can be moved into activity for any purpose whatever, and then only in aid of such appellate jurisdiction. The very grant of this power implies, first, that an appeal has been or is sought to be perfected in this court; second, that the ordinary processes of

appeal are inadequate; and, third, that some writ known to the common law, or such as this court may invent, will complete or fully supplement the appellate power.

### 3. Supervisory Jurisdiction.

(a) "The supreme court shall have a general supervisory control. * * *" (Constitution, Sec. 2, Art. VIII.) By express terms the constitution has lodged this jurisdiction in the supreme court, sitting as an organized judicial body; and, those terms being both mandatory and prohibitory, that power of general supervision cannot be conferred upon any other body or upon any individual or individuals. It cannot be added to, subtracted from, or taken away altogether. Tested by this rule, the invalidity of the Act is too apparent for comment. It assumes to vest in two of the justices of this court, sitting in chambers, full power and authority to carry its provisions into effect, and to do any and all things which this court could do in the premises. The distinction between a court and the judge or justices thereof is so well defined and so distinctly marked in the jurisprudence of this country that it calls for no further comment here. If the objection now under consideration was the only one urged against the measure, we might eliminate the provisions conferring the appointing power upon the justices at chambers, and permit the remainder of the Act to stand.

(b) "The supreme court shall have general supervisory control over all *inferior courts.* * * *" (Constitution, Sec. 2, Art. VIII.) The supervisory power of this court operates only upon *inferior courts,* not upon persons; and, under the rule of interpretation provided by the constitution itself, it cannot extend to or affect any other body or any individual or individuals. It is manifest from the terms employed that the Act does not purport to affect the district court—does not intend to disarrange the judicial machinery or change the place of trial, which can only be effected by a change of venue—but seeks merely to change the personnel of the presiding officer. The

Act is aimed at the individual, not at the constituent part of the lower court; for a change of judge would not change the court. For all judicial purposes it would remain the same after the change as before. (*Hedrick* v. *Hedrick*, 28 Ind. 291.)

(c) The supervisory power granted to this court is a co-ordinate power, and, as with its original and appellate jurisdiction, so with this. The power thus conferred will only be exercised after consideration, deliberation, and a judicial determination of the merits of the controversy with reference to which it is sought to be invoked. It cannot be appealed to and a remedy had under it as a matter of course. Commenting upon the sweep of this power, this court, in *State ex rel. Whiteside* v. *District Court*, 24 Mont. 562, 63 Pac. 400, said: "As the appellate jurisdiction was granted for the purpose of revision and correction, and the original jurisdiction under these writs was granted to enable us to render such relief as is appropriate under them, so the supervisory power was granted to meet emergencies to which those other powers and instrumentalities are not commensurate. It is independent of both, and was designed to infringe upon the functions of neither. It has its own appropriate functions, and, without undertaking to define particularly what these functions are, we think one of them is to enable this court to control the course of litigation in the inferior courts where those courts are proceeding within their jurisdiction, but by a mistake of law, or wilful disregard of it, are doing a gross injustice, and there is no appeal, or the remedy by appeal is inadequate. Under such circumstances, the case being exigent, no relief could be granted under the other powers of this court, and a denial of a speedy remedy would be tantamount to a denial of justice. Cases may arise also where some relief could be granted under some one of the other original writs named, but such relief would not be complete and adequate because of some error which could not be corrected by means of the limited functions of the particular writ, while the supervisory power is unlimited in the means at our disposal for its appropriate exercise."

The terms "supervisory control" imply something to supervise as well as something to control, and the exercise of judicial discretion or judgment on the part of this court, while the Act under consideration does not provide for the one, nor permit the other. If the resident judge signs the petition to this court without stating any ground whatever, this court must appoint another judge to take his place, whether he be disqualified or not. No discretion is left to this court, and no judicial action, is called for. The appointment must be made. If the resident judge refuses or neglects to sign the petition, the litigant himself may apply to this court upon a petition setting forth the allegations of bias or prejudice on the part of the resident judge, and upon a summary hearing this court may appoint another judge to take his place; and that, too, without notice to the accused judge or opposing party litigant, and without any hearing having been granted to either of them. The effect of such an appointment, though made summarily, is to declare the resident judge guilty of entertaining bias or prejudice to such an extent as to render the complaining litigant unable to secure a fair trial, and to make such bias or prejudice operate as a disqualification of the resident judge. This we may not do, for this is not a legislative body. Nowhere in this Act, by express terms or by any fair implication, can it be said that bias or prejudice on the part of the resident judge is declared to be a disqualification, and we know of no other statute to that effect; and, in the absence of such statutory declaration, bias or prejudice does not constitute a disqualification in this jurisdiction. This question was settled by this court in the early history of this state. (*In re Davis' Estate,* 11 Mont. 1, 27 Pac. 342.) In our judgment, the constitutional authority to entertain the petition or grant the relief prayed for must be apparent, and in the absence of such authority we cannot act.

In addition to there being no constitutional authority under which this court can proceed, the Act is in violation and directly contravenes the provisions of Section 12 of Article VIII of the Constitution, which are that "any judge of the district court

may hold court for any other district judge.   *   *   *" This section of the constitution makes provision for the substitution of one judge for another, and must be held to be exclusive, at least until the authority vested in it has been exhausted.   By analysis, we reach the result:

(1) The framers of our organic law saw fit to repose the power of substituting one district judge for another in the district judge himself, and upon his invitation any other district judge in the state may be called to take his place; and, if the invitation be accepted and acted upon, no authority can be found to deny such invited judge authority to proceed, and that, too, though he may reside in the same district as the one extending the invitation.

(2) It cannot be seriously contended that the purpose of the Act was to provide a mode of substitution in addition to the one prescribed by the constitution.   This, clearly, cannot be done; but, if it could, such a result would lead to endless confusion.   If, under the provisions of this legislation, the supreme court should assume to act, and should by order designate the judge of the Fifth judicial district of this state to proceed "at some proper and convenient time" to Silver Bow county and try the contested election case of *Ryan* v. *Weston,* and, immediately before this court made such order, the district judge in whose department that cause is now pending should invite one of the other judges of the Second judicial district to try the same, and his invitation should be accepted and acted upon, and the case tried and determined by such invited judge under express authority conferred by the constitution, which clothes such invited judge with all the power and authority of the one whom he supplants, the anomalous, not to say ridiculous, position of this court and the judge designated by it under this legislative enactment would be too palpable for discussion.   The resulting confusion would be intolerable.

(3) Section 1 of the Act provides that, upon the failure or refusal of the district judge to sign the petition asking for his own displacement, the supreme court or any two justices at

chambers shall designate and appoint a judge "or any judicial district of this state other than that in which such action, proceeding, motion or application is pending, to appear  \*  \*  \* and preside at the trial of such action or other matter mentioned in the order and to determine the same." This provision emphasizes the fact that the judge appointed by this court must come from some district other than the one in which the cause is pending, and in that respect contravenes the provisions of Section 12, above, which provides that any district judge may hold court for any other district judge, and shall do so when required by law; and that, too, whether he come from another or from the same district. When the constitution uses the terms "any district judge may hold court for any other district judge," it means what it says, and cannot be tortured into excluding one of the judges of the First judicial district or two of the judges of the Second.

Finally, the power sought to be conferred upon this court or two of its justices is not judicial in its character, but purely ministerial or executive, and invades another department of our state government, which may not be done. Section 1, Article IV, of the Constitution, provides: "The powers of the government of this state are divided into three distinct departments: The legislative, executive and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted." The orderly disposition of the business of the state requires the faithful observance of this constitutional mandate. "This court is placed by the constitution at the head of the judicial system of the state; from its judgments there is no appeal to any other state tribunal, and its determinations are binding upon the rest of the state judiciary. The legislature cannot interfere with its existence or supremacy; nor can that body alter the nature of its jurisdiction and duties." (*People* v. *Richmond,* 16 Colo. 274, 26 Pac. 929.)

However reluctant this court may be to declare unconstitutional any measure which has received the sanction of the legislative department of our state government, we have no right to hesitate to do so when the invalidity of the Act is apparent, when direct attack is made upon it, and we are called upon to determine the question.

Numerous other objections are urged against the validity or policy of the measure, but, under the views herein expressed, we deem it unnecessary to consider them.

The motion to dismiss the proceedings is sustained, and the proceedings are dismissed.

*Dismissed.*

Mr. Chief Justice Brantly: I concur in the result reached by Mr. Justice Holloway, but, speaking for myself, do not wish to authorize the inference from anything said in the opinion that this court might not, under its power of supervisory control, and independently of legislative action, upon proper application, prohibit a district judge from proceeding with the trial of a cause if it were made manifest that he was for any reason incapable of giving either of the parties a fair trial. Whether or not this court has such power is a question which is not presented upon this application. I do not wish to be understood as expressing any opinion as to whether this power does or does not exist, but do not think consideration of the question should be regarded as foreclosed.

Mr. Justice Milburn: I concur in the opinion of Mr. Justice Holloway, and in the conclusion reached by him; but I wish to add that there should not be any inference drawn from the language of the opinion that, independently of the Act now declared invalid, this court has not any power to control a lower court, the judge of which is sitting in a cause in which he is biased and prejudiced. This question is still an open one, and as to it I do not express any opinion.